**H**
Motions, Pleadings and Filings

United States District Court,
S.D. New York.

Natalie FIGUEROA, Plaintiff,
v.
BOSTON SCIENTIFIC CORPORATION,
Defendant.

**No. 00 Civ. 7922(DC).**

June 27, 2003.

Patient brought products liability suit against manufacturer of vaginal sling alleging that it was defective and caused erosion of her vaginal wall. On manufacturer's motions in limine to preclude patient from offering certain evidence, the District Court, Chin, J., held that: (1) report of Food and Drug Administration (FDA), which set forth health risks presented by use of medical device, was admissible hearsay; (2) findings of FDA about use of manufacturer's vaginal sling, which were stated in agency's medical report, and agency's notification to manufacturer of its concerns, were probative and not unfairly prejudicial; and (3) evidence of voluntary recall of vaginal sling by manufacturer was admissible, relevant, and not unfairly prejudicial.

Motions denied in part and granted in part.

West Headnotes

**[1] Evidence 333(1)**
157k333(1) Most Cited Cases

Report or statement of Food and Drug Administration (FDA), which set forth health risks presented by use of medical device, was admissible under public records exception to hearsay rule, on motion for summary judgment and at trial in product liability action against manufacturer, since agency reported on matter that was observed pursuant to duty imposed by law and about which there was duty to report. Fed.Rules. Evid.Rule 803(8), 28 U.S.C.A.; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[2] Evidence 146**
157k146 Most Cited Cases

Findings of Food and Drug Administration (FDA) about use of manufacturer's vaginal sling which were stated in agency's medical report, and agency's notification to manufacturer of its concerns, were probative and not unfairly prejudicial in product liability action against manufacturer; agency's report constituted strong evidence that manufacturer was on notice that sling presented potential risk of "vaginal erosion and dehiscence" and risk that it was not functioning as intended, and report constituted evidence that manufacturer should have done more to warn physicians about risks posed to women who had already been implanted with sling. Fed.Rules. Evid.Rule 403, 28 U.S.C.A.

**[3] Products Liability 81.1**
313Ak81.1 Most Cited Cases

Evidence that doctors tested material used in vaginal slings prior to approval of that device by Food and Drug Administration (FDA), that such material was obtained from division of manufacturer, that doctors obtained results that demonstrated that such material was too abrasive and not fit for its intended use, that such results were distorted or concealed by manufacturer, that manufacturer sold sling notwithstanding those results, and that doctors were paid by manufacturer, was relevant and admissible, on patient's product liability and failure to warn claims against manufacturer.

**[4] Evidence 141**
157k141 Most Cited Cases

**[4] Evidence 146**
157k146 Most Cited Cases

Probative value of fact, that approximately 720 plaintiffs brought suit against manufacturer over allegedly defective medical device, was substantially outweighed by danger of unfair prejudice, confusion of issues, and considerations of undue delay and waste of time, since other cases produced mixed results. Fed.Rules. Evid.Rule 403, 28 U.S.C.A.

**[5] Evidence 219.20(3)**
157k219.20(3) Most Cited Cases

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT F**

Evidence of voluntary recall of vaginal sling by manufacturer was admissible against manufacturer in product liability lawsuit; although implantation of medical device occurred prior to recall, it was not subsequent remedial measure because recall occurred four months before discovery and diagnosis of patient's vaginal erosion and five months before sling was removed. Fed.Rules. Evid.Rule 407, 28 U.S.C.A.

**[6] Evidence 146**
157k146 Most Cited Cases

Probative value of evidence of voluntary recall of vaginal sling by manufacturer outweighed danger of unfair prejudice to manufacturer, in product liability action against manufacturer, since patient had fair basis for arguing that recall itself was negligent or defective; reasonable jury could have found that doctors were not adequately warned about risks of continued use of sling by women who already had been implanted with it. Fed.Rules. Evid.Rule 403, 28 U.S.C.A.

**[7] Evidence 318(1)**
157k318(1) Most Cited Cases

Medical study, purporting to recount out of court statements made by physicians during course of certain interviews, was inadmissible hearsay, in patient's product liability lawsuit against medical device manufacturer.

Benedict P. Morelli & Associates, P.C., By: David S. Ratner, Martha M. McBrayer, Arthur L. Salmon, New York, New York, for Plaintiff.

Kaye Scholer LLP, By: James D. Herschlein, June A. O'Hea, New York, New York, and Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, By: Earl W. Gunn, Atlanta, Georgia, for Defendant.

*MEMORANDUM DECISION*

CHIN, J.

*1 In this products liability case, plaintiff Natalie Figueroa sues for personal injuries purportedly suffered as the result of her use of the ProteGen Sling (the "Sling"), a medical device manufactured by defendant Boston Scientific Corporation ("BSC"). Trial is scheduled for June 30, 2003. Before the Court are BSC's eight motions in limine to preclude Figueroa from offering certain evidence. The motions are denied in part and granted in part, to the extent and for the reasons set forth below.

*THE FACTS*

The facts are recounted in detail in the Court's opinion denying BSC's motion for summary judgment. *Figueroa v. Boston Scientific Corp.,* 254 F.Supp.2d 361 (S.D.N.Y.2003). The facts relevant to the pending motions in limine are summarized as follows:

The Sling is a device designed to treat urinary incontinence in women. It was launched on a national basis by BSC in February 1997. In December 1997, Figueroa was implanted with the Sling by her urologist, Dr. Favale, who had first learned of the Sling from BSC's sales representatives. (Favale Dep. at 12-13, 16-17). According to Figueroa, Dr. Favale did not discuss with her the risk of vaginal erosion. (Figueroa Dep. at 36, 50-51, 71).

Dr. Favale eventually stopped using the Sling because concerns that the Sling was causing urethral erosion surfaced among his colleagues. (Favale Dep. at 19). BSC's representatives nevertheless continued to actively promote the Sling. (*Id.* at 11, 20-21).

In January 1999, BSC voluntarily recalled the Sling.

On March 18, 1999, the Mid Atlantic Region, Newark District, of the Food and Drug Administration (the "FDA") sent a letter (the "Mid Atlantic Letter") to BSC. The Mid Atlantic Letter transmitted an inspection report prepared after an inspection of BSC's facility at 45 Barbour Pond Drive, Wayne, New Jersey. A portion of the report recounts a discussion that the FDA inspector had with a BSC employee during the inspection about the recall of the Sling; the employee stated that no complaints had been received relating to the recall. The employee also stated that complaints had been received by BSC in its Indiana facility, relating not to "inadequate manufacturing practices" but to "inadequate implantation techniques." (O'Hea Aff. Supp. Mot. To Exclude FDA Letter, Ex. A at 2). The report also states: "During the inspection, no objectionable conditions were noted." (*Id.* at 3).

On March 24, 1999, the New England District of the FDA sent a letter (the "New England Letter") to BSC. The New England Letter addressed the recall of the Sling, stating:

The [FDA] agrees with your decision to recall the

> [Sling] ... and Sling Kits ..., all lot numbers. We consider the devices to be adulterated and misbranded in that use of [the Sling] in the treatment of female urinary incontinence is associated with higher than expected rate of vaginal erosion and dehiscence, and does not appear to function as intended.

***2** (*Id.* Ex. B at 1). The New England Letter stated that the FDA had classified the recall as a Class II recall, which "is defined as a situation in which the use of, or exposure to, a violative product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote." (*Id.* at 2).

In approximately April 1999, Figueroa began bleeding from her vagina. (Figueroa Dep. at 59-60). On April 22, 1999, Dr. Favale diagnosed anterior vaginal erosion in Figueroa, at the Sling site, where he could see the Sling material lying beneath the former vaginal wall. (Figueroa Dep. at 60; Favale Dep. at 69-72, 79-81).

Dr. Favale did not learn of the January 1999 recall for four months. He learned of it only because Figueroa faxed him a copy of the recall notice. FN1 Dr. Favale promptly removed the Sling, on May 22, 1999.

> FN1. BSC contends that Dr. Favale did receive a letter, but Dr. Favale's testimony as to whether he read the notice was equivocal. As discussed below, a fair issue exists as to whether physicians were sufficiently warned as to the risks to women already implanted with the Sling.

Some 720 lawsuits have been filed against BSC alleging personal injuries caused by use of the Sling. Approximately ten have been settled, and, with one exception, the settlements were for approximately $10,000 or less. Three cases have been tried to conclusion, with verdicts in favor of BSC in two of the cases and a verdict in favor of the plaintiff in the third. That case has been appealed.

Figueroa proffers evidence that two consultants hired by BSC to perform research on the Sling obtained negative results prior to the launch of the product. They tested slings made with Hemashield material (made by a division of BSC and similar to material used to make the Sling) on twenty patients, but tracked only ten of the patients for follow-up results. According to plaintiff, five of the ten suffered vaginal erosion and three others showed no positive benefits from the procedure. Figueroa also contends that the two researchers submitted an abstract in October 1996 representing that they had been testing BSC sling material in patients since October 1995, when in fact they did not begin doing so until April 1996. (Pl. Mem. Opp. To Mot. In Limine at 12-13 & Ex. A at 29, 34, 41, 46).

At some point a private consulting firm, The HSM Group, Ltd., prepared a report entitled "Thought Leader Study," which is a summary of interviews of physicians who gave their "perceptions" of BSC and the Sling. Some of the physicians had personal experience with the Sling and some had not.

*DISCUSSION*

BSC has filed eight motions in limine to exclude the following evidence from trial: (1) the New England Letter; (2) "any evidence of BSC's conduct after the date" Figueroa purchased her Sling; (3) evidence of BSC's "corporate motive or intent"; (4) evidence of alleged fraud on the FDA; (5) evidence that BSC provided Hemashield material to the two researchers prior to the time Hemashield was approved by the FDA for use in a vaginal sling; (6) evidence of the other lawsuits; (7) evidence of BSC's voluntary recall of the Sling; and (8) the Thought Leader Study. I discuss each motion in limine in turn.

1. *The New England Letter*

***3** [1] BSC raises two objections to admission of the New England Letter: hearsay and Rule 403. Both objections are overruled.

As to the hearsay objection, Rule 803(8) provides that the following public records and reports are not excluded by the hearsay rule, regardless of the availability of the declarant:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, and (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed.R.Evid. 803(8)(B), (C).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Here, the New England Letter was a "report" or a "statement" of a public agency, the FDA, setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," namely, health risks presented by use of a medical device, the Sling. The New England Letter also set forth "factual findings resulting from an investigation made pursuant to authority granted by law." Indeed, the New England Letter was issued by the District Director of the New England District following the FDA's "review [ ]" and an "evaluation" of the recall. The FDA's classification of the recall as a "Class II" recall obviously was based on findings and determinations made following an investigation.

BSC argues that the New England Letter is untrustworthy because it is inconsistent with and contradicts the Mid Atlantic Letter, which was issued the same week. The argument is rejected, for it is based on a mischaracterization of the Mid Atlantic Letter. The Mid Atlantic Letter was based on and transmitted a report concerning an inspection of one of BSC's facilities, but the report did not purport to make any findings with respect to the Sling or the recall. The report did not purport to opine on whether the Sling was "adulterated and misbranded." Indeed, the report merely relayed the statements of a BSC employee who claimed that the company had not received any complaints related to the recall, only complaints about inadequate implantation techniques by physicians. These statements were hearsay, and the inspector did not purport to comment on them one way or the other.

[2] As to the Rule 403 objection, BSC argues that the probative value of the New England Letter is slight because it is untrustworthy. That argument is rejected, for the untrustworthiness argument is rejected for the reasons discussed above. In addition, for the reasons set forth below in my discussion of the admissibility of the recall, the FDA's findings and notification to BSC of its concerns are probative and not *unfairly* prejudicial. In particular, the New England Letter constitutes strong evidence that BSC was on notice that the Sling presented a potential risk of "vaginal erosion and dehiscence," and a risk that it was not functioning as intended. The New England Letter thus also constitutes evidence to support Figueroa's argument that BSC should have done more to warn physicians about the risks posed to women who had already been implanted with the Sling.

*4 Hence, this motion is denied. *See Golod v. Hoffman La Roche*, 964 F.Supp. 841, 855-56 (S.D.N.Y.1997) (holding that FDA reports were admissible to show notice in products liability case against manufacturer of prescription drug); *Becker v. Nat'l Health Prods., Inc.*, 896 F.Supp. 100, 104 (N.D.N.Y.1995) (holding that FDA "complaint/injury reports" were admissible under public records and business records exceptions and were not unfairly prejudicial).

2. *Post-Sale Conduct*

BSC seeks to exclude "any evidence of [its] conduct after the date the subject ... Sling was sold." (Def. Mem. Supp. Mot. To Exclude Evidence of Post-Sale Conduct at 1). This motion is vague and unduly broad. In any event, for the reasons discussed below, evidence of post-sale conduct is relevant and not unfairly prejudicial. Accordingly, this motion is denied.

3. *Corporate Motive and Intent*

BSC moves to exclude any evidence of its "corporate motive and intent." Figueroa does not oppose this motion, as she does not seek to offer evidence of BSC's "corporate motive and intent." Hence, this motion is granted.

4. *Fraud on the FDA*

BSC seeks to preclude all evidence or argument of "alleged fraud" on the FDA. Figueroa states that she does not seek to introduce any such evidence, for she is not seeking to prove that the FDA was defrauded. Hence, this motion is granted, subject to the discussion with respect to the next motion in limine.

5. *The Hemashield Research*

[3] BSC seeks to exclude evidence that it provided Hemashield material to Drs. Rackley and Appell prior to FDA approval of the use of such material for a vaginal sling. This motion is denied.

Plaintiff may present evidence that: Rackley and Appell tested Hemashield material in vaginal slings prior to release of the Sling; the Hemashield was obtained from a BSC division; Rackley and Appell obtained results that demonstrated that the Hemashield material was too abrasive and not fit for its intended use; the results were distorted and/or concealed by BSC; BSC launched the Sling notwithstanding these results; and Rackley and Appell were paid by BSC. This evidence is relevant to Figueroa's products liability and failure to warn

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

claims and thus the objections are overruled.

6. *Other Lawsuits*

[4] The motion to preclude evidence as to the existence of the other 720 or so lawsuits is granted. The other cases have produced mixed results. The probative value of the fact that approximately 720 plaintiffs have brought suit is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time.

7. *The Recall*

[5] BSC objects to any evidence of the voluntary recall on the basis of Rules 407 and 403. Both objections are overruled.

Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

***5** Fed.R.Evid. 407.

Under Rule 407, evidence of subsequent remedial measures is inadmissible to establish negligence or other culpable conduct. *See Fish v. Georgia-pacific Corp.*, 779 F.2d 836, 839-40 (2d Cir.1985); *Cann v. Ford Motor Co.*, 658 F.2d 54, 59 (2d Cir.1981). By its terms, however, Rule 407 bars evidence of remedial measures taken *after* an injury or harm. Rule 407 "does not apply to *pre* accident conduct." *Ake v. Gen. Motors Corp.*, 942 F.Supp. 869, 879 (W.D.N.Y.1996); *see also In re Air Crash Disaster*, 86 F.3d 498, 531 (6th Cir.1996) (holding that Rule 407 does not apply to post-manufacture, pre-accident measures); *U.S. Fid. & Guar. v. Baker Material Handling Corp.*, 62 F.3d 24, 27 (1st Cir.1995) (same); *Chase v. Gen. Motors Corp.*, 856 F.2d 17, 20-21 (4th Cir.1988) (holding that evidence of post-accident recall was inadmissible, but that evidence of pre-accident design changes to braking system was admissible).

Here, BSC's Rule 407 objection is overruled, for the recall occurred four months *before* the discovery and diagnosis of Figueroa's vaginal erosion and five months *before* the Sling was removed. I am not persuaded that the Rule 407 "event" here is the implantation of the Sling, just as the "event" in *Chase*, for example, was the accident, not the sale of the allegedly defective vehicle. 856 F.2d at 21. Although some of the injury or harm to Figueroa might have occurred prior to the recall, some of the injury and harm occurred after as well. In any event, the injury was not evident until Figueroa began to suffer vaginal bleeding in April 1999. (*See* Figueroa Dep. at 59-60).

[6] The Rule 403 objection is overruled as well. Figueroa has a fair basis for arguing that, in essence, the recall itself was negligent or defective. A reasonable jury could find that Dr. Favale was not adequately warned about the risks of continued use of the Sling by women who already had been implanted with it. As BSC itself stresses, the recall was only for unused product and did not call for the explantation of the Sling. Both notices (one dated January 22, 1999 and one dated February 5, 1999) contain only one sentence about existing Sling patients, and Dr. Favale apparently did not believe the notice that he received even applied to patients who already were implanted. A reasonable jury could find that BSC was negligent in not doing more to ensure that physicians promptly took steps to follow-up with existing patients. A reasonable jury could find that if BSC had made more of an effort to notify physicians about the risks presented to existing patients, Dr. Favale might not have waited five months to remove the Sling from Figueroa and that the injury or harm could have been lessened or averted completely. The probative value outweighs the danger of unfair prejudice.

8. *The Thought Leader Study*

[7] The motion to preclude the Thought Leader Study is granted, as the Study apparently is mere hearsay and contains double hearsay. Even assuming the Study itself is not hearsay, it merely purports to recount out-of-court statements made by physicians during the course of certain interviews. Some of these physicians had no experience themselves with the Sling, and thus any statements they may have made about the sling would be based on what they heard--this would constitute triple hearsay. BSC's objection to the admissibility of the Thought Leader Study is sustained.

*CONCLUSION*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

***6** The motions in limine are granted in part and sustained in part as set forth above.

2003 WL 21488012 (S.D.N.Y.), Prod.Liab.Rep. (CCH) P 16,724

Motions, Pleadings and Filings (Back to top)

• 2003 WL 22331264 (Trial Order) Memorandum Decision (Jun. 27, 2003)

• 7:00CV07922 (Docket) (Oct. 18, 2000)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.