# UNITED STATES DISTRICT COURT
## District of Minnesota

| | |
|---|---|
| Fingerhut Business Services, Inc.,<br>Plaintiff,<br>v.<br>Wal-Mart.com, Inc.,<br>Defendant. | **Case No: 01-CV-1261 JNE/JSM**<br><br>**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS** |

Plaintiff Fingerhut Business Services, Inc. ("FBSI") respectfully submits the following Proposed Jury Instructions. FBSI reserves the right to amend and to supplement these instructions in accordance with any rulings of the court prior to trial and as developments otherwise warrant.

Dated: October 22, 2004.

**OPPENHEIMER WOLFF & DONNELLY LLP**

By s/ Edward M. Laine
Edward M. Laine, #59535
Katherine M. Wilhoit, #313853
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 607-7000
Facsimile: (612) 607-7100

Lori V. Douglas
Assistant Counsel
Federated Department Stores
Regional Law Department
219 Perimeter Center Parkway, Suite 511
Atlanta, Georgia 30346
Telephone: (770) 913-5512

***ATTORNEYS FOR PLAINTIFF FINGERHUT BUSINESS SERVICES, INC.***

# TABLE OF CONTENTS


| INSTR. NO. | DESCRIPTION | PAGE NO. |
|---|---|---|
| Instruction No. 1 | General: Nature of Case; Burden of Proof; Duty of Jury; Cautionary | 1 |
| Instruction No. 2 | Evidence; Limitations | 3 |
| Instruction No. 3 | Bench Conferences And Recesses | 5 |
| Instruction No. 4 | No Transcript Available [Note Taking] | 6 |
| Instruction No. 5 | Outline of Trial | 7 |
| Instruction No. 6 | Burden of Proof | 8 |
| Instruction No. 7 | Province of Judge and Jury | 9 |
| Instruction No. 8 | Conduct of the Jury | 10 |
| Instruction No. 9 | Duties of Jury: Recesses | 12 |
| Instruction No. 10 | Explanatory | 13 |
| Instruction No. 11 | Judge's Opinion | 14 |
| Instruction No. 12 | Evidence; Limitations | 15 |
| Instruction No. 13 | "Inferences" Defined | 17 |
| Instruction No. 14 | Notice or Knowledge - Duty of Inquiry | 18 |
| Instruction No. 15 | Credibility of Witnesses | 19 |
| Instruction No. 16 | Impeachment - Inconsistent Statement or Conduct | 20 |
| Instruction No. 17 | Number of Witnesses | 21 |
| Instruction No. 18 | Oral Statements or Admissions | 22 |
| Instruction No. 19 | Use of Depositions as Evidence | 23 |
| Instruction No. 20 | Election of Foreperson; Duty of Deliberate Communications With Court; Cautionary; Unanimous Verdicts; Verdict Form | 24 |
| Instruction No. 21 | Claims of the Parties | 26 |

Instruction No. 22 Need to Interpret Agreement Whether Maximum Services Fees are Owing ..... 27

Instruction No. 23 Agreement Interpretation: Determination of Amount of Minimum Services ..... 29

Instruction No. 24 Interpretation Guideline Contained in Fulfillment Services Agreement ..... 31

Instruction No. 25 Interpretation Guidelines Provided by Law ..... 32

Instruction No. 26 The Implied Covenant of Good Faith and Fair Dealing; How It Applies And What It Means ..... 34

Instruction No. 27 Anticipatory Breach: When It Occurs and How It Affects the Parties' Rights and Obligations ..... 36

Instruction No. 28 [Provisional] Determination of When a Contract Provision is Considered a Valid Liquidated Damages Clause or an Invalid Penalty ..... 37

# PRELIMINARY INSTRUCTIONS

## INSTRUCTION NO. 1

## GENERAL: NATURE OF CASE; BURDEN OF PROOF; DUTY OF JURY; CAUTIONARY

Ladies and Gentlemen:

I will take a few moments now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial, I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all such instructions – both those I give you now and those I give you later – are equally binding on you and must be followed.

This is a civil case brought by Plaintiff Fingerhut Business Services, Inc. ("Fingerhut") against the Defendant, Wal-Mart.com, Inc. ("Wal-Mart"). Fingerhut alleges that Wal-Mart failed to perform under the terms of a contract. Wal-Mart denies that allegation.

It will be your duty to decide from the evidence whether Fingerhut is entitled to a verdict against Wal-Mart. From the evidence, you will decide what the facts are. You are entitled to consider the evidence in light of your own observations and experiences and the affairs of life. You will then apply those facts to the law which I give you in these and in my other instructions, and in that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, only a part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony, and the extent to which their testimony is consistent with other evidence that you believe.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.

**Authority:** Model Civil Jury Inst. 1.01, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 2**

**EVIDENCE; LIMITATIONS**

I have mentioned the word "evidence." Evidence includes the testimony of witnesses; documents and other things received as exhibits; and any facts that have been stipulated – that is, formally agreed to by the parties.

Certain things are not evidence. I will list those things for you now:

1. Statements, arguments, questions and comments by lawyers are not evidence.
2. Exhibits that are identified by a party but not offered or received in evidence are not evidence.
3. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.
4. Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.
5. Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I shall tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used. You should pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms,

since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

**Authority:** Model Civil Jury Ins. 1.02, District Courts of the Eighth Circuit (2001 ed.).

## INSTRUCTION NO. 3

## BENCH CONFERENCES AND RECESSES

During the trial, it may be necessary for me to talk with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

**Authority:** Model Civil Jury Inst. 1.03, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 4**

**NO TRANSCRIPT AVAILABLE [NOTE-TAKING]**

At the end of the trial you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult. You must pay close attention to the testimony as it is given. If you wish, however, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. And do not let note-taking distract you so that you do not hear other answers by the witness. The Clerk will provide each of you with a pad of paper and a pen or pencil. At each recess, leave them ________________.

[When you leave at night, your notes will be secured and not read by anyone.]

**Authority:** Model Civil Jury Inst. 1.04, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 5**

**OUTLINE OF TRIAL**

The trial will proceed in the following manner:

First, Fingerhut's attorney may make an opening statement. Next, Wal-Mart's attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

Fingerhut will then present evidence and counsel for Wal-Mart may cross-examine. Following Fingerhut's case, Wal-Mart may present evidence and Fingerhut's counsel may cross-examine.

After presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. The court will instruct you further on the law. After that, you will retire to deliberate on your verdict.

**Authority:** Model Civil Jury Inst. 1.06, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 6**

**BURDEN OF PROOF**

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claim depends upon that fact. The party who has the burden of proving a fact must prove it by the preponderance of the evidence. To prove something by the preponderance of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved.

The preponderance of the evidence is not necessarily determined by the greater number of witnesses or exhibits a party has presented.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

**Authority:** Model Civil Jury Inst. 3.04, District Courts of the Eighth Circuit (2001 ed.)

**INSTRUCTION NO. 7**

**PROVINCE OF JUDGE AND JURY**

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. I must stress that you are required to accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of the witnesses.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 101.10 (5th ed. 2000).

**INSTRUCTION NO. 8**

**CONDUCT OF THE JURY**

Finally, to insure fairness, you, as jurors, must obey the following rules:

First, do not talk among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

Second, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

Third, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended and your verdict has been accepted by me. If someone should try to talk to you about the case during the trial, please report it to me.

Fourth, during the trial you should not talk with any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness may be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you either.

Fifth, do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

Sixth, do not do any research (including research in the dictionary) or make any investigation about the case on your own.

Seventh, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

**Authority** Model Civil Jury Inst. 1.05, District Courts of the Eighth Circuit (2001 ed.).

# INSTRUCTION NO. 9

## DUTIES OF JURY: RECESSES

We are about to take a recess and I remind you of the instruction I gave you earlier. During this recess or any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, please let me know about it immediately. Do not read, watch or listen to any news reports of the trial. Finally, keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every recess, but keep them in mind throughout the trial.

**Authority**: Model Civil Jury Inst. 2.01, District Courts of the Eighth Circuit (2001 ed.).

# FINAL INSTRUCTIONS

## INSTRUCTION NO. 10

## EXPLANATORY

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because all are important. This is true even though some of those I gave you at the beginning of trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, all instructions, whenever given and whether in writing or not, must be followed.

**Authority:** Model Civil Jury Inst. 3.01, District Courts of the Eighth Circuit (2001 ed.).

## INSTRUCTION NO. 11

## JUDGE'S OPINION

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be.

**Authority:** Model Civil Jury Inst. 3.02, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 12**

**EVIDENCE; LIMITATIONS**

I have mentioned the word "evidence." Evidence includes the testimony of witnesses; documents and other things received as exhibits; and any facts that have been stipulated – that is, formally agreed to by the parties.

Certain things are not evidence. I will list those things for you now:

1. Statements, arguments, questions and comments by lawyers are not evidence.
2. Exhibits that are identified by a party but not offered or received in evidence are not evidence.
3. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.
4. Testimony that I strike from the record, or tell you to disregard, is not evidence and must not be considered.
5. Anything you see or hear about this case outside the courtroom is not evidence, unless I specifically tell you otherwise during the trial.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I shall tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used. You should pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms,

since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

**Authority:** Model Civil Jury Ins. 1.02, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 13**

**"INFERENCES" DEFINED**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You may draw from the facts that you find have been provided such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusion that reason and common sense lead you to draw from facts established by the evidence in the case.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 104.20 (5th ed. 2000).

**INSTRUCTION NO. 14**

**NOTICE OR KNOWLEDGE – DUTY OF INQUIRY**

The means of knowledge are ordinarily the equivalent in law to knowledge. If it appears from the evidence in the case that a person had information that would lead a reasonably prudent person to make inquiry through which that person would surely learn the facts, then his person may be found to have had actual knowledge of those facts, the same as if that person had made such inquiry and had actually learned such facts.

That is to say, the law charges a person with notice and knowledge of whatever that person would have learned, on making such inquiry as it would have been reasonable to expect the person to make under the circumstances. Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time, and that the person had regular opportunities to observe the condition, then you may draw the inference that the person had knowledge of the condition.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 104.24 (5th ed. 2000).

**INSTRUCTION NO. 15**

**CREDIBILITY OF WITNESSES**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

**Authority:** Model Civil Jury Inst. 3.03, District Courts of the Eighth Circuit (2001 ed.).

**INSTRUCTION NO. 16**

**IMPEACHMENT – INCONSISTENT STATEMENT OR CONDUCT**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because a mistake or accident or other innocent reason.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 105.04 (5th ed. 2000).

**INSTRUCTION NO. 17**

**NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence of nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses that does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence producing such belief in your minds.

The test is not which side brings the greater number of witnesses or takes the most time to present its evidence, but which witnesses and which evidence appeal to your minds as being most accurate and otherwise trustworthy.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 104.54 (5th ed. 2000).

**INSTRUCTION NO. 18**

**ORAL STATEMENTS OR ADMISSIONS**

Evidence as to any oral statements or admissions, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care. The person making the alleged statement or admission may not have expressed clearly the meaning intended, or the witness testifying to an alleged admission may have misunderstood or have misquoted what was actually said.

However, when an oral statement or admission made outside of court is proved by reliable evidence, that statement or admission may be treated as trustworthy, and should be considered along with all other evidence in the case.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 104.53 (5th ed. 2000).

**INSTRUCTION NO. 19**

**USE OF DEPOSITIONS AS EVIDENCE**

During the trial, certain testimony has been presented by way of deposition. The deposition consisted of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case. The testimony of a witness who, for some reason is not present to testify from the witness stand may be presented in writing under oath [or on a videotape]. Such testimony is entitled to the same consideration and is to be judged as to credibility, and weighed, and otherwise considered by you, insofar as possible, in the same way as if the witness had been present and had testified from the witness stand.

**Authority:** Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 105.02 (5th ed. 2000).

# INSTRUCTION NO. 20

## ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICTS; VERDICT FORM

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment, because a verdict must be unanimous. You must each decide the case for yourself, but only after you have considered all of the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning the verdict.

Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed and dated by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone—including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case.

The Special Verdict Form Reads:

READ SPECIAL VERDICT FORM

You will take the Special Verdict Form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the blanks on the Special Verdict Form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.

**Authority:** Model Civil Jury Inst. 3.06, District Courts of the Eighth Circuit (2001 ed.); Kevin F. O'Malley, et al., Federal Jury Practice & Instructions, Civil, § 106.01 (5th ed. 2000).

**INSTRUCTION NO. 21**

**CLAIMS OF THE PARTIES**

Fingerhut contends that, under the terms of the Fulfillment Services Agreement, Wal-Mart owes Fingerhut a Minimum Services Fee for each month from and including July 2001 through January 2002. The months of July 2001 through January 2002 are the final seven months of the Initial Term of the Fulfillment Services Agreement. Under the terms of the Agreement, the Initial Term commences on June 1, 2000 and continues until January 31, 2002. Wal-Mart contends that, under the terms of the Fulfillment Services Agreement, no Minimum Services Fee is owing. Wal-Mart also contends that, if the Fulfillment Services Agreement is construed to provide for the payment of a Minimum Services Fee for the months of July 2001 through January 2002, the Minimum Services Fee amounts to a liquidated damages provision clause, and that the provision is void as a penalty. I will later provide you with instructions as to what constitutes a liquidated damages provision and when a liquidated damages provision is valid and when such a provision is void as a penalty.

Fingerhut contends that Wal-Mart engaged in conduct which constitutes an anticipatory breach by telling Fingerhut in early 2001 that it did not intend to use Fingerhut as a fulfillment service provider after July 2001 and by stating that it was not obligated to pay Minimum Services Fees for the last several months of the Initial Term. Wal-Mart denies that this conduct, under the terms of the Fulfillment Services Agreement, constitutes an anticipatory breach.

Fingerhut further contends, in the alternative and if a Minimum Services Fee is not owing, that Wal-Mart breached the Fulfillment Services Agreement and that it is entitled to damages caused by the breach. Wal-Mart denies that, under the terms of the Fulfillment Services Agreement, its conduct constituted a breach.

**Authority:** Plaintiff's First Amended Complaint; Defendant's Amended Answer.

## INSTRUCTION NO. 22

## NEED TO INTERPRET AGREEMENT WHETHER MINIMUM SERVICES FEES ARE OWING

In deciding whether Minimum Services Fees are owing for the last seven months of the Term, you will need to determine what various terms of the Fulfillment Services Agreement mean. Shortly, I will supply you with some rules of law to use as guides in interpreting the Fulfillment Services Agreement.

Fingerhut claims that the Fulfillment Services Agreement should be interpreted to mean that a Minimum Services Fee is owing for any month during the Term that the number of Wal-Mart packages shipped during that month is less than the Forecast Package Volume. Forecast Package Volume is defined in Schedule A of the Agreement as follows:

> The term "Forecast Package Volume" shall mean the greater of the (a) number of packages estimated to be shipped as set forth in the monthly forecast submitted by Company to FBSI three (3) months immediately prior to the commencement of the subject month or (b) the number of packages estimated to be shipped in the subject month as set forth in the annual forecast submitted by Company upon execution of this Agreement and attached hereto or (c) with respect to each year after the expiration of the first (1st) year, the number of packages estimated to be shipped in the subject month as set forth in the annual forecast submitted by Company in the month of March prior to commencement of the following one-year period under the Agreement.

Fingerhut claims that Minimum Services Fees are owing for each of the last seven months of the Term because, for each of those months, the number of packages shipped was less than the forecast contained in clause (b) which I just read -- "the number of packages estimated to be shipped in the subject month as set forth in the annual forecast submitted by Company upon execution of this Agreement and attached hereto."

Wal-Mart contends that the Fulfillment Services Agreement should be interpreted so that clause (b), the clause pertaining to the annual forecast submitted upon execution of the

Agreement, drops out and has no effect after May 2002. Wal-Mart further contends that, if the Agreement is so interpreted, no Minimum Services Fee is owing because it supplied a zero forecast for the months of July 2001 through January 2002 and, therefore, packages shipped is not less than Forecast Package Volume.

**Authority:** FBSI's Memorandum in Support of Motion for Summary Judgment; Wal-Mart's Opposition to FBSI's Motion for Summary Judgment.

## INSTRUCTION NO. 23

## AGREEMENT INTERPRETATION: DETERMINATION OF AMOUNT OF MINIMUM SERVICES

If you find that the Fulfillment Services Agreement requires Wal-Mart to pay Minimum Services Fees for the months of July 2001 through January 2002, you will be asked on the verdict form to determine what amount, if any, of Minimum Services Fees are owing. Answering this question will also require you to interpret the Fulfillment Services Agreement.

Wal-Mart contends that no Minimum Services Fees are due under the Fulfillment Services Agreement for the months of August 2001 through January 2002 because, as there were no packages shipped for those months, the "Package Fee" as defined in the Fulfillment Services Agreement is zero. Specifically, Wal-Mart contends that, because the Package Fee is defined on Page 8 of Schedule A of the Fulfillment Services Agreement as being based in part on the "actual average number of items per package shipped during the month," and because there were no packages actually shipped for the months of August 2001 through January 2002, there is no Package Fee.

Fingerhut contends that, in the absence of any actual packages shipped for months during the Initial Term, a determination of the Package Fee can be made using Schedule B of the Fulfillment Services Agreement, the Wal-Mart Business Plan. Fingerhut contends that under Section 4(a) of the Fulfillment Services Agreement, Wal-Mart represented "that it desires to conduct its internet direct-to-consumer business in accordance with the specifications set forth on Schedule B," and Fingerhut further contends that the pricing in the Fulfillment Services Agreement was based upon Schedule B. Also, Fingerhut contends that Wal-Mart's proposed interpretation under the facts of the case would be contrary to the implied covenant of good faith

and fair dealing. I will later instruct you with respect to the implied covenant of good faith and fair dealing.

**Authority:** FBSI's Memorandum in Support of Motion for Summary Judgment; Wal-Mart's Opposition to FBSI's Motion for Summary Judgment.

## INSTRUCTION NO. 24

## INTERPRETATION GUIDELINE CONTAINED IN FULFILLMENT SERVICES AGREEMENT

I said I would provide you with some guidelines to assist in interpreting the Fulfillment Services Agreement. One of the guidelines is contained in the Fulfillment Services Agreement itself. Section 21(i) provides the following guideline:

> Each party acknowledges it has participated in the negotiation and preparation of this Agreement, and has reviewed this Agreement and had the opportunity to consult with its counsel and accountants with respect to its terms. Therefore, each party agrees that the rule of construction to the effect that any ambiguities in a document shall be interpreted against the drafting party, will not be utilized in the interpretation, construction, or enforcement of this Agreement, and no consideration shall be given to the issue of which party hereto actually prepared, drafted or requested any term or condition of this Agreement or any schedule or other instruments subject hereto.

You should take this guideline into account when you decide what the Fulfillment Services Agreement means.

**Authority:** Fulfillment Services Agreement, effective date, June 1, 2000.

**INSTRUCTION NO. 25**

**INTERPRETATION GUIDELINES PROVIDED BY LAW**

In addition to the guideline I just read to you that is actually contained in the Fulfillment Services Agreement, general principles of contract law may also assist you in interpreting the Fulfillment Services Agreement.

As a preliminary matter, during the course of this trial you heard evidence from both parties regarding the Fulfillment Services Agreement. You may apply any of the evidence presented by either of the parties to the guidelines that I am about to read, as long as the evidence explains or expands upon the contract terms in a manner consistent with the language of the Fulfillment Services Agreement.[1] In other words, you must not consider any evidence that contradicts, varies or subtracts from the plain terms of the Fulfillment Services Agreement.[2]

When interpreting the meaning of the Fulfillment Services Agreement,

(1) You should read the Fulfillment Services Agreement and its schedules as a whole, so that your interpretation of the contract will give fair meaning to all of the language employed by the parties;[3]

(2) You should give the language employed by the parties a practical interpretation so that the interpretation reflects the parties' reasonable expectations[4]; and

---

1 Wallace Steel, Inc. v. Ingarsoll-Round Co., 739 F.2d 112, 115 (2nd Cir. 1984).

2 Id.

3 Partrick v. Guarniere, 612 N.Y.S. 2d 630, 632 (N.Y. App. Div. 1994); John E. Andrus v. DeBuono, 688 N.Y.S.2d 687, 688 (N.Y. App. Div. 1999); Gonzalez v. Norrito, 682 N.Y.S.2d 100, 101 (N.Y. App. Div. 1998).

4 Long Island Savings Bank FSB v. Geloda/Briarwood Corp., 596 N.Y.S.2d 808, 810 (N.Y. App. Div. 1993); Partrick v. Guarniere, 612 N.Y.S. 2d 630, 632 (N.Y. App. Div. 1994); John E. Andrus v. DeBuono, 688 N.Y.S.2d 687, 688 (N.Y. App. Div. 1999); Gonzalez v. Norrito, 682 N.Y.S.2d 100, 101 (N.Y. App. Div. 1998).

(3) You should not interpret the Fulfillment Services Agreement and its schedules in such a manner which will leave any provision of the contract without force and effect[5]

If evidence is admitted at trial that you believe tends to show that Wal-Mart knew what Fingerhut understood a term to mean when they entered into the Fulfillment Services Agreement, then you must interpret the term in accordance with Fingerhut's meaning, rather than any secret meaning which Wal-Mart did not communicate to Fingerhut.[6]

---

5 John E. Andrus v. DeBuono, 688 N.Y.S.2d 687, 688 (N.Y. App. Div. 1999); Gonzalez v. Norrito, 682 N.Y.S.2d 100, 101 (N.Y. App. Div. 1998).

6 Rest. (2nd) Contracts § 201(2).

## INSTRUCTION NO. 26

## THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING: HOW IT APPLIES AND WHAT IT MEANS

I talked a little earlier about the need to interpret the Fulfillment Services Agreement (whether Minimum Services Fees are owing) and the determination of the amount of minimum services, both of which alluded to the implied covenant of good faith and fair dealing. I'd now like to talk with you about what the implied covenant of good faith and fair dealing means, and how it applies in this case.

Every contract contains in it an implied obligation of that the parties will act in good faith and fair dealing.[7] The implied covenant of good faith prohibits either party from doing anything which will have the effect of destroying or injuring the right of the other person to receive the fruits of the contract. [8] The implied covenant of good faith includes within it any promise which a reasonable person would be justified in understanding was included in the parties' agreement.[9] Where the parties' contract contains within it a term allowing a party to act with discretion, the

---

7 Designers North Carpet, Inc. v. Mohawk Industries, Inc., 153 F. Supp. 2d 193, 196 (E.D.N.Y. 2001); Chemical Bank v. Stahl, 272 A.D.2d 1, 14-15, 712 N.Y.S.2d 452, 462 (2000); 511 West 232nd Owners Corp., et al v. Jennifer Realty, Inc., 98 N.Y.2d 144, 153 (N.Y. 2002); Tapp of Nassau Supermarkets, Inc. v. Linden Boulevard, L.P., 269 A.D.2d 306, 307 (N.Y. App. Div. 2000).

8 511 West 232nd Owners Corp., et al v. Jennifer Realty, Inc., 98 N.Y.2d 144, 153 (N.Y. Ct. App. 2002); Designers North Carpet, Inc. v. Mohawk Industries, Inc., 153 F. Supp. 2d 193, 196 (E.D.N.Y. 2001); Dalton v. Educational Testing Services, 87 N.Y.2d 384, 389 (N.Y. 1995).

9 511 West 232nd Owners Corp., et al v. Jennifer Realty, Inc., 98 N.Y.2d 144, 153 (N.Y. Ct. App. 2002); Dalton v. Educational Testing Services, 87 N.Y.2d 384, 389 (N.Y. Ct. App. 1995).

implied covenant of good faith and fair dealing mandates that the party may not act arbitrarily or irrationally in exercising that discretion.[10]

Fingerhut contends that Wal-Mart breached the implied covenant of good faith and fair dealing by (a) attempting to unilaterally terminate the Fulfillment Services Agreement prior to the end of the Initial Term, without cause, by forecasting that it would ship "0" packages through Fingerhut from August 2001 through January 2002; (b) refusing to pay Fingerhut the Minimum Services Fee as required by the Fulfillment Services Agreement; and (c) attempting to justify its failure to pay Fingerhut the Minimum Services Fee based on its refusal to ship any packages through Fingerhut from August 2001 through January 2002.

[10] Dalton v. Educational Testing Services, 87 N.Y.2d 384, 389 (N.Y. Ct. App. 1995); 1-10 Industry Associates LLC v. Trim Corporation of America, 297 A.D. 2d 630, 631-632, 747 N.Y.S. 2d 29, 31 (N.Y. 2002).

**INSTRUCTION NO. 27**

**ANTICIPATORY BREACH: WHEN IT OCCURS AND HOW IT AFFECTS THE PARTIES' RIGHTS AND OBLIGATIONS**

Fingerhut claims that Wal-Mart anticipatorily breached the Fulfillment Services Agreement when Wal-Mart unequivocally communicated: that its forecasts would be "zero" beginning in August 2001; that it would not have any inventory in Fingerhut's distribution center after July 2001; that it would not use Fingerhut for fulfillment services after July 2001; and that it would not pay Fingerhut a Minimum Services Fee after June 2001. An anticipatory breach of a contract occurs when a party indicates, through a definite and final communication, prior to the termination of the contract, that it will not continue to perform the contract.[11]

If you find that Wal-Mart anticipatorily breached the Fulfillment Services Agreement, then you must concluded that Fingerhut was entitled to then treat Wal-Mart's statements as ending the contract at that time, and that Fingerhut was entitled to immediately sue Wal-Mart for damages thereafter for the entire contract term.[12] Finally, if you find that Wal-Mart anticipatorily breached the contract, then you must also conclude that Fingerhut was relieved of all future performance under the Fulfillment Services Agreement.[13]

---

[11] 22A N.Y. Jur.2d Contracts § 445; Robert E. Kehoe, Jr., 1 Jury Instructions for Contract Cases, § 7.02 (1995) (modified); Rachmani Corp. v. 9 East 96th Street Apt. Corp., 211 A.D.2d 262, 266-67 (N.Y. App. Div. 1995).

[12] 22A N.Y. Jur.2d Contracts §§ 447, 450.

[13] 22A N.Y.Jur2d Contracts § 452.

**INSTRUCTION NO. 28 [PROVISIONAL][14]**

**DETERMINATION OF WHEN A CONTRACT PROVISION IS CONSIDERED A VALID LIQUIDATED DAMAGES CLAUSE OR AN INVALID PENALTY**

I previously explained to you the parties' claims, and told you that Wal-Mart contends that the Minimum Services Fee is void as a penalty. Wal-Mart bears the burden of proving that the Minimum Services Fee is a liquidated damages clause, and also bears the burden of proving that it is not a valid liquidated damages clause, but rather an invalid penalty.[15] I will now explain to you what a liquidated damages provision is, and when a liquidated damages provision is valid and when it is void as a penalty.

In general, parties to a contract may agree upon a provision that fixes in advance the amount of compensation a party is to receive in the event of a breach of the agreement by the other party.[16] Such a provision is called a "liquidated damages clause." Liquidated damages clauses need not be reciprocal; in other words, the clause may apply only when one party or another breaches the agreement.[17] Although a liquidated damages clause need not take any particular form or expressly state its purpose, a liquidated damages clause cannot be inferred or

---

14 In the event that the Court determines that the issue of whether the Minimum Services Fee constitutes a liquidated damages provision, and whether the provision is a valid liquidated damages provision or an invalid penalty, to the jury, Fingerhut respectfully requests that this Jury Instruction be submitted to the jury.

15 Perma-Store Bi County Corp. v. Ackerman, 15 Misc. 2d 640, 182 N.Y.S.2d 655, 657 (N.Y. Sup. Ct. 1959).

16 Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc., 41 N.Y.2d 420, 361 N.E.2d 1015, 393 N.Y.S.2d 365 (1977); Lease Corp. of America, Inc. v. William Resnick, et al, 288 A.D.2d 533 (N.Y. App. Div. 2001); Simon v. Linder, 106 Misc. 387, 176 N.Y.S. 257 (N. Y. 1919); Schonzitt v. Wiesen, 546 N.Y.S.2d 368 (N.Y. App. Div. 1989); 36 N.Y. Jur.2d Damages § 154.

17 36 N.Y. Jur.2d Damages § 154.

implied into a contract.[18] Fingerhut contends that the parties did not intend the Minimum Services Fee to constitute a liquidated damages clause. Wal-Mart denies this contention.

If the Minimum Services Fee is a liquidated damages clause, it is valid if (a) at the time the parties entered into the contract, damages flowing from a potential breach of contract were difficult to ascertain, and (b) the amount of damages fixed in advance was a reasonable measure of the anticipated probable harm.[19] Fingerhut contends that if the Minimum Services Fee is a liquidated damages clause, it is valid because neither Wal-Mart nor Fingerhut were able to know, when they entered into the Fulfillment Services Agreement, Wal-Mart's actual package volume for any given month of the contract. According to Fingerhut, the Minimum Services Fee was a reasonable measure of anticipated probable loss because (1) it only applies in those months when Wal-Mart's actual package volumes failed to meet Wal-Mart's pre-determined annual or monthly forecasts; and (2) it worked on a sliding scale, so that the amount of the Minimum Services Fee increased as Wal-Mart's actual package volumes fell. In other words, if Wal-Mart failed to meet its pre-determined volume forecast by just a few packages, the Minimum Services Fee would be very small. Wal-Mart disagrees with Fingerhut's contention as to the validity of the Minimum Services Fee as a valid liquidated damages clause.

Rather, Wal-Mart argues that the Minimum Services Fee is void as an improper penalty. A penalty is a stipulated sum inserted into a contract that serves as a punishment for default.[20]

---

18 Barry, Bette & Led Duke, Inc. v. State of New York, 240 A.D.2d 54, 57 (N.Y. App. Div. 1998); 36 N.Y. Jur.2d Damages § 154.

19 BDO Seiman v. Hirshberg, 93 N.Y.2d 382, 396, 712 N.E.2d 1220, 1227, 690 N.Y.S.2d 854, 861 (1999); Norris v. McMechen, 135 Misc. 361, 238 N.Y.S. 181 (1930); Time Associates, Inc. v. Blake Realty, Inc., 212 A.D.2d 879 (N.Y. App. Div. 1995); 36 N.Y. Jur.2d Damages § 154.

20 36 N.Y. Jur.2d Damages § 155.

Generally speaking, where damages flowing from a breach of contract can be easily established (at the time the parties entered into the contract), or are plainly disproportionate to the harm caused, then the stipulated sum will be treated as a penalty and will not be enforced.[21]

In determining whether a contract provision is a valid liquidated damages clause or an invalid penalty, the contract must be interpreted as of the date it was signed by the parties, and not at the time of breach.[22]

---

[21] LeRoy v. Sayers, 217 A.D.2d 63, 69-70, 635 N.Y.S.2d 217, 222 (N.Y.App. Div. 1995); Pyramid Centres and Company, Ltd v. Kinney Shoe Corp., 244 A.D.2d 625, 627, 663 N.Y.S.2d 711, 713 (1997); 36 N.Y. Jur.2d Damages § 155.

[22] 36 N.Y. Jur.2d Damages § 156.