**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Fingerhut Business Services, Inc.,<br>Plaintiff,<br>v.<br>Wal-Mart.com, Inc.,<br>Defendant. | **FIRST AMENDED COMPLAINT**<br>***(Jury Trial Demanded)*** |

Plaintiff Fingerhut Business Services, Inc., ("FBSI"), for its Complaint against defendant Wal-Mart.com, Inc., ("WM.com"), states:

**PARTIES, JURISDICTION AND VENUE**

1. FBSI is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Minnetonka, Minnesota.

2. WM.com is a corporation organized and existing under the laws of the State of Delaware, with its headquarters in Menlo Park, California. WM.com also has a branch location in Brisbane, California.

3. The Court has jurisdiction over the subject matter under the provisions of 28 U.S.C. § 1332 in that this is an action between corporations incorporated by and with their principal places of business in different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. The Court has personal jurisdiction over WM.com, and venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

**EXHIBIT B**

**FACTS**

5. FBSI and WM.com are parties to a Fulfillment Services Agreement with a stated Effective Date of June 1, 2000 and signed by FBSI on August 7, 2000 and WM.com on August 3, 2000 (hereinafter "Agreement"). The terms and conditions of the Agreement, including its Schedule A and Schedule B, are hereby incorporated by reference.

6. Generally, the Agreement sets forth the terms and conditions pursuant to which WM.com retained FBSI to provide specified fulfillment services to support the internet direct to consumer business of WM.com. In light of the confidentiality provision contained in the Agreement, the Agreement itself is not appended hereto nor are the terms of the Agreement herein described in detail.

7. The term of the Agreement commenced on June 1, 2000, the Effective Date, and continues until January 31, 2002 ("Initial Term").

8. In January 2001, WM.com informed FBSI that, before the expiration of the Initial Term, it would cease using FBSI's fulfillment services including all services being provided out of FBSI's Utah distribution center, a facility largely dedicated to providing services to WM.com. At that time, WM.com stated an intent to transfer its business to a new distribution center of its own in Carrollton, Georgia.

9. As part of its response to WM.com, FBSI reminded WM.com that, pursuant to the Agreement, monthly Minimum Service Fees would continue to be owed to FBSI throughout the balance of the Initial Term.

10. The monthly Minimum Service Fees are intended to compensate FBSI, in part, for the dedication of a business opportunity to WM.com as well as for fixed costs which FBSI incurs regardless of the monthly volume of the internet direct to consumer business of WM.com.

11. The Agreement prescribes the manner by which monthly Minimum Service Fees are to be calculated.

12. WM.com has continued to reinforce its position that it intends to discontinue utilizing FBSI's fulfillment services and vacate FBSI's Utah distribution center in mid-2001. By electronic correspondence dated March 21, 2001, WM.com stated to FBSI that it intended to use an Ohio facility operated by another vendor of fulfillment services and that its package volume for FBSI following August 31, 2001 would be zero for each of the remaining months of the Initial Term.

13. FBSI has been and continues to be ready, willing and able to perform under the terms of the Agreement for the entirety of the Initial Term, and FBSI has advised WM.com of that fact.

14. WM.com has continued to state to FBSI, unequivocally, that it will not pay monthly Minimum Service Fees for any month after it ceases to use FBSI's fulfillment services or for any month it provides FBSI with a monthly forecast of zero.

15. Under the terms of the Agreement, and notwithstanding any cessation of WM.com's utilization of FBSI for fulfillment services or any monthly forecast of zero, monthly Minimum Service Fees continue to be owed for each month of the Initial Term. Specifically, the Agreement unambiguously provides that the number of packages estimated to be shipped as set

forth in the annual forecast submitted by WM.com upon execution of the Agreement is to be utilized as a minimum benchmark. The parties clearly intended that this annual forecast would be the base minimum for the Initial Term.

16. WM.com has unequivocally repudiated the applicability of the annual forecast it submitted upon execution of the Agreement as an applicable benchmark for determining monthly Minimum Service Fees for any month of the Initial Term subsequent to May, 2001.

17. Based upon the assumption that almost all of WM.com inventory will be removed by July, 2001, monthly Minimum Service Fees owed by WM.com to FBSI for the months of July, 2001 through January, 2002 total not less than $3,205,100.00.

18. Under the terms of the Agreement, amounts in addition to Minimum Services Fees have or will become owing during the balance of the Initial Term.

**FIRST CLAIM FOR RELIEF: DECLARATORY JUDGMENT**

19. FBSI realleges paragraphs 1-18.

20. The parties have a dispute concerning the interpretation of the Agreement including whether monthly Minimum Service Fees are owed during the balance of the Initial Term as well as the manner in which said Minimum Service Fees are to be calculated.

21. There is a real and actual controversy ripe for adjudication pursuant to 28 U.S.C. §§ 2201-2202.

**SECOND CLAIM FOR RELIEF: ANTICIPATORY BREACH AND REPUDIATION OF CONTRACT**

22. FBSI realleges paragraphs 1-21.

23. WM.com has unequivocally and positively made statements, without justification, that it will not perform its obligations under the Agreement, including its obligation to utilize FBSI for fulfillment services and to pay FBSI monthly Minimum Service Fees.

24. FBSI is entitled to receive monthly Minimum Service Fees for each remaining month of the Initial Term, and said monthly Minimum Service Fees are to be calculated, in part, by utilizing the annual forecast submitted by WM.com upon execution of the Agreement as an applicable minimum benchmark. In addition, FBSI is entitled to receive all other sums, which become due and owing under the terms of the Agreement throughout the balance of the Initial Term.

**WHEREFORE**, FBSI respectfully prays that this Court enter an Order and Judgment in its favor and against WM.com as follows:

1. Declaring that WM.com is obligated to pay monthly Minimum Service Fees throughout the balance of the Initial Term and that said monthly Minimum Service Fees are to use, as part of the calculation, the annual forecasts submitted by WM.com upon execution of the Agreement.

2. Awarding FBSI monthly Minimum Service Fees for each remaining month of the Initial Term, said Minimum Service Fees to be calculated in part by utilizing the annual forecast submitted by WM.com upon execution of the Agreement, and further awarding to FBSI such other additional and further amounts which may become owing under the terms of the Agreement for the remainder of the Initial Term, together with interest as calculated under the Agreement.

3. In the alternative, awarding Fingerhut damages in an amount sufficient to place FBSI in as good a position as it would have been had WM.com not repudiated and breached the Agreement.

4. Awarding FBSI prejudgment interest, together with the costs and disbursements incurred in connection with this lawsuit.

5. Awarding FBSI such other and further relief as this Court may deem just and proper.

**OPPENHEIMER WOLFF & DONNELLY LLP**

Dated: November 8, 2001

By [signature]

Edward M. Laine, #59535
Kari L. Wraspir, #028029X
3400 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 607-7000
Facsimile: (612) 607-7100

Gina M. Grothe
Assistant General Counsel
Fingerhut Corporation
4400 Baker Road
Minnetonka, Minnesota 55343

*ATTORNEYS FOR FINGERHUT BUSINESS SERVICES, INC.*

**CERTIFICATE OF SERVICE BY UNITED STATES MAIL**

I hereby certify that on the **8th** day of **November, 2001,** I caused to be served the **FIRST AMENDED COMPLAINT** upon the within named party, by placing a true and correct copy in an envelope addressed as follows and depositing in the United States Mail at Minneapolis, Minnesota:

Jonathan A. Strauss, Esq.
DORSEY & WHITNEY LLP
220 South Sixth Street, Suite 1300
Minneapolis, MN 55402-1498

Edward M. Laine